IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

CYNTHIA PRECIADO,

                    Plaintiff,

        v.

CONCORDE CAREER COLLEGES,
INC., a Foreign Business Corporation;
KEITH KNITTLE, an individual,

                 Defendants.

Case No. 3:22-cv-1745-JR

FINDINGS AND
RECOMMENDATION

RUSSO, Magistrate Judge:

Plaintiff, Cynthia Preciado, brought this action in Multnomah County Circuit Court alleging sexual battery and negligence against defendants Concorde Career Colleges, Inc. (Concorde), and Concorde instructor Keith Knittle. Defendant Concorde removed the action to this Court. Defendants now separately move to compel arbitration. For the reasons stated below, the motions to compel arbitration should be granted and this action should be dismissed.

ALLEGATIONS

Plaintiff alleges defendant Keith Knittle, on several occasions during Fall 2021 polysomnographic classes, made inappropriate comments of a sexual nature and hugged female

students.   Complaint (ECF 1-1) at ¶ 4.   Plaintiff further alleges Knittle gained her trust and confidence through educating and mentoring her and through his approval and credentialing by defendant Concorde.  Id.

Plaintiff alleges that between November 16 and 17, 2021, she attended one-on-one study sessions with Knittle at his request.  Id. at ¶ 5.  Plaintiff asserts during those sessions, Knittle made suggestive comments, pulled her in for a hug, and spanked her buttocks.  Id. at ¶ 6.

Plaintiff alleges she reported this sexual harassment to Concorde employees and was told it was Knittle's last day at Concorde.  Id. at ¶ 7.

Plaintiff alleges defendant Knittle committed sexual battery in the course and scope of his employment resulting in plaintiff suffering fear, humiliation, anxiety, panic attacks, and disabling emotional distress.  Id. at ¶¶ 9-11.

Plaintiff alleges defendant Concorde was negligent in: (1) allowing or approving defendant Knittle's supervision of plaintiff for one-on-one study sessions when he was untrustworthy and unsuitable for the program; (2) failing to remove defendant Knittle from Concorde programs prior to plaintiff's incident; and (3) failing to recommend to plaintiff or instruct plaintiff to use a different person for boards studying.  Id. at ¶ 13.

DISCUSSION

Plaintiff executed an arbitration agreement and waiver of jury trial as a condition of enrollment at Concorde.   Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-4, any arbitration agreement within its scope is enforceable and district courts must direct parties to proceed to arbitration on issues covered by a signed arbitration agreement. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  The Court's role under the FAA is

therefore limited to determining (1) whether a valid agreement to arbitrate exists and if it does; (2) whether the agreement encompasses the dispute at issue.  Id.

The arbitration agreement at issue provides, in part:

> Any dispute I may bring against the College, or any of its parents, subsidiaries, officers, directors, or employees, no matter how characterized, pleaded or styled, shall be resolved by binding arbitration conducted in accordance with the Consumer Arbitration Rules ("Consumer Rules") of the American Arbitration Association (the "AAA"), and decided by a single Arbitrator mutually selected by parties to this Arbitration Agreement and Waiver of Jury Trial ("Agreement"). In the event the parties to this Agreement cannot agree on the selection of an Arbitrator, or as mutually desired by both parties in lieu of a mutual selection, the arbitration will be conducted by an Arbitrator selected by the AAA. The arbitration hearing will be conducted in Portland, OR 97232.

Concorde Arbitration Agreement and Waiver of Jury Trial (attached as Ex 1 to the Declaration of Koula Foura (ECF 7)) at ¶ 1.

The FAA applies to arbitration agreements arising out of transactions in interstate commerce such as the plaintiff's enrollment agreement with Concorde.  See, e.g., Sanders v. Concorde Career Colleges, Inc., 2017 WL 1025670, at *2 (D. Or. Mar. 16, 2017).  Plaintiff does not dispute that the arbitration agreement covers the claims raised in the complaint.  Rather, plaintiff asserts the arbitration clause is unconscionable and contrary to public policy, and, therefore, unenforceable.

To determine enforceability of the clause, the Court applies ordinary state-law principles governing contract formation.  See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  Plaintiff asserts the arbitration provision is unconscionable because it is one-sided and unlimited.

Unconscionability is a question of law to be decided based on the facts in existence at the time the contract was made.  Best v. U.S. National Bank, 303 Or. 557, 560, 739 P.2d 554, 556 (1987).  The party asserting unconscionability bears the burden of demonstrating that the provision

3 – FINDINGS AND RECOMMENDATION

in question is unconscionable. W.L. May Co. v. Philco–Ford Corp., 273 Or. 701, 707, 543 P.2d 283, 286 (1975).

The test for unconscionability has both procedural and substantive components. Procedural unconscionability refers to the conditions of contract formation and specifically two factors: oppression and surprise. Oppression exists when there is inequality in bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice. Vasquez–Lopez v. Beneficial Oregon, Inc., 210 Or.App. 553, 567, 152 P.3d 940, 948 (2007). Surprise involves whether terms were hidden or obscured such as fine print or ambiguous wording. Siggelkow v. Nw. Grp., Inc., 2019 WL 294759, at *8 (D. Or. Jan. 22, 2019).

Substantive unconscionability focuses on whether the substantive terms unfairly favor the party with greater bargaining power. Id.

> The primary focus … appears to be relatively clear: Substantial disparity in bargaining power, combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contractual provision being unconscionable. Unconscionability may involve deception, compulsion, or lack of genuine consent, although usually not to the extent that would justify rescission under the principles applicable to that remedy. The substantive fairness of the challenged terms is always an essential issue.

Carey v. Lincoln Loan Co., 203 Or.App. 399, 422–23, 125 P.3d 814, 828 (2005).

A.    Lack of Balance

Plaintiff asserts she had no meaningful opportunity to negotiate the arbitration provision and was faced with a take-it-or-leave-it option.[1]  However, "more than a contract of adhesion and unequal bargaining power is required to void an arbitration clause." Fuqua v. Kenan Advantage

---

[1] Plaintiff also reserves the right to contest that she is a party to the arbitration agreement stating she has no recollection of signing it.  However, Concorde has produced the agreement with plaintiff's electronic signature and initials for each provision along with an electronic signature consent form executed by plaintiff on July 27, 2020.  Concorde Arbitration Agreement and Waiver of Jury Trial (attached as Ex 1 to the Declaration of Koula Foura (ECF 7)).

Grp., Inc., 2012 WL 2861613, at *10 (D. Or. Apr. 13, 2012), adopted, 2012 WL 2861660 (D. Or. July 11, 2012); Willis v. Nationwide Debt Settlement Group, 878 F. Supp. 2d 1208, 1222 (D. Or. 2012) (contract of adhesion alone insufficient to establish unconscionability); Wilson v. Bristol-Myers Squibb Co., 2018 WL 2187443, at *5 (D. Or. May 11, 2018) (under Oregon law, "'take-it-or-leave it' arbitration contracts in the context of beginning new employment are not procedurally unconscionable"); Motsinger v. Lithia Rose–FT, Inc., 211 Or. App. 610, 615-17, 156 P.3d 156 (2007) (unequal bargaining power is insufficient alone to invalidate an arbitration clause without some evidence of deception, compulsion, or unfair surprise).

Plaintiff contends that in addition to unequal bargaining power, the agreement itself is one-sided in that it does not bind Concorde to arbitrate any claim it may bring against plaintiff and conversely is unlimited in scope as to the claims plaintiff must arbitrate. However, the agreement binds both parties to arbitration. Paragraph one of the agreement states that any dispute plaintiff may bring against Concorde shall be arbitrated, however, paragraph three states "**Both the College and I** explicitly waive any right to a jury trial. I understand that the decision of the Arbitrator will be binding, and not merely advisory. The award of the Arbitrator may be entered as a judgment in any Court having jurisdiction." Concorde Arbitration Agreement and Waiver of Jury Trial (attached as Ex 1 to the Declaration of Koula Foura (ECF 7)) at ¶ 3 (emphasis added). In addition, in Oregon, the presence of a non-mutual arbitration agreement is not per se unreasonable. Motsinger, 211 Or. App. at 619-23. Instead, Motsinger instructs courts to focus on the effects of terms in an arbitration agreement. Id. Motsinger concluded that "an approach that focuses on the one-sided effect of an arbitration clause rather than on its one-sided application to evaluate substantive unconscionability is most consistent with the common law in Oregon regarding unconscionability of other kinds of contractual provisions and with state and federal policies

regarding arbitration." Id. at 623. Thus, courts applying Oregon law must determine "whether, given the unequal bargaining power, the effect of the arbitration clause makes the parties' respective obligations so unbalanced as to be unconscionable." Id. at 625. As noted, the agreement does not lack mutuality, but even under plaintiff's interpretation that paragraph 3 only bonds Concorde to arbitrate any claim plaintiff brings rather than one it brings, is still not so unbalanced as to make it substantively unconscionable. The agreement requires Concorde to pay all costs associated with arbitration that exceed the applicable court filing fee and provides for all remedies available from a court. Moreover, the agreement provides a convenient forum located in Portland where the agreement was entered into. See Concorde Arbitration Agreement and Waiver of Jury Trial (attached as Ex 1 to the Declaration of Koula Foura (ECF 7)) at ¶¶ 1, 3, 4, 6. The agreement is not substantively unconscionable in this regard. See Williams v. CMH Mfg. W., Inc., 2021 WL 8156025, at *6 (D. Or. Dec. 16, 2021), report and recommendation adopted, 2022 WL 633584 (D. Or. Mar. 4, 2022):

> this Court does not find that the effect of the agreements is so unbalanced as to make them unconscionable. Plaintiff fails to identify any other terms of the agreements that would make them unbalanced. The agreements do not shorten the applicable limitations period or impose prohibitive arbitration costs on Plaintiffs…. The agreements do not contain burdensome forum selection clauses…. And the agreements do not impose "terms such as one-sided discovery, one-sided coverage, and the allocation of payment of the arbitration fees." Thus, apart from the fact that the effect of these agreements is to require arbitration of Plaintiffs' claims in CMH's preferred forum, there are no other factors that demonstrate that the agreements are unbalanced, and the Court cannot conclude that they are substantively unconscionable.

B.      Nondisclosure Provisions

The agreement provides that all aspects of the underlying dispute and arbitration shall remain strictly confidential. Concorde Arbitration Agreement and Waiver of Jury Trial (attached as Ex 1 to the Declaration of Koula Foura (ECF 7)) at ¶ 8. Plaintiff asserts this provision is

unconscionable because it falls more heavily on plaintiff than defendants and is uniquely invidious in the context of sexual harassment. However, the agreement excepts from confidentiality the prohibitions on nondisclosure pursuant to Oregon law. Moreover, Oregon Courts favor freedom to contract over public resolution of disputes and uphold confidentiality provisions in arbitration agreements. See Bettencourt v. Brookdale Senior Living Communities, Inc., 2010 WL 274331, at *8 (D. Or. Jan. 14, 2010):

> Oregon law, however, does not limit the private right to settle an employment dispute confidentially outside of a courtroom, which suggests the policy favoring the freedom of individuals to contract is more highly valued than the deterrent effect that results from public resolution of such matters. Moreover, the Oregon Court of Appeals has previously upheld the confidentiality provision in an arbitration agreement in the face of a plaintiff's argument that the provision is unfair and unconscionable. See Vasquez–Lopez v. Beneficial Or., Inc., 210 Or.App. 553, 575, 152 P.3d 940 (2007). In doing so, the court noted confidentiality provisions in arbitration agreements are common. Id. at 575 n. 6, 152 P.3d 940.

C.      Course and Scope of Employment

In response to defendant Knittle's motion to arbitrate, plaintiff asserts defendants have not conceded Knittle was acting in the course and scope of employment which may necessitate a return to this court to determine the issue if arbitration is compelled. However, plaintiff has alleged Knittle was acting in the course and scope of employment and was an agent of Concorde. Thus, it is an issue squarely within the parameters of the arbitration provision.

D.      Speak Out Act and Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act

Enacted on December 7, 2022, the Speak Out Act provides that "[w]ith respect to a sexual assault dispute or sexual harassment dispute, no nondisclosure clause or nondisparagement clause agreed to before the dispute arises shall be judicially enforceable in instances in which conduct is alleged to have violated Federal, Tribal, or State law." 42 U.S.C.A. § 19403.

On March 3, 2022, President Joe Biden signed the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act into law. The Act provides, in part, as follows:

> (a) In general.--Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). The Act defines the phrase predispute arbitration agreement as follows:

> The term "predispute arbitration agreement" means any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement.

9 U.S.C. § 401(a)(1). As to Act's applicability to conduct prior to March 3, 2022, the enacted law also states:

> This Act, and the amendments made by this Act, shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act.

PL 117-90, March 3, 2022, 136 Stat 26.

As noted above, whether the facts support a determination of unconscionability is decided based on the facts in existence at the time the contract was made. Nonetheless, plaintiff argues that while these Acts may not be retroactively applicable, it does demonstrate that the arbitration provision is contrary to public policy. See Hinman v. Silver Star Grp., LLC, 280 Or. App. 34, 41, 380 P.3d 994, 998 (2016) (Substantive unconscionability concerns whether the terms of a contract are contrary to public policy.).

However, the Congressional Record demonstrates that while Congress felt public policy required the legislation to stop protecting predators and to stop silencing survivors, Congress

specifically considered whether to make the Ending Forced Arbitration Act retroactive and chose

not to do so.  <u>Compare</u> Statement of Senator Kirsten Gillibrand (D-N.Y.) (emphasis added):[2]

> This bill is one of the most significant workplace reforms in the last 50 years and is a major step toward changing a system that uses secrecy to protect perpetrators and silence survivors ... The [Act] **will void existing forced arbitration agreements** for sexual harassment and sexual assault and end their use. It will give survivors their day in court, allow them to discuss their cases publicly and end the days of institutional protection for harassment.

<u>with</u> PL 117-90, March 3, 2022, 136 Stat 26. (Act applies to disputes arising on or after March 3,

2022).  To discern whether, in the context of a particular transaction, substantive concerns relating

to unfairness or oppression are sufficiently important to warrant interference with the parties'

freedom to contract as they see fit, courts frequently look to legislation for relevant indicia of

public policy.  Bagley v. Mt. Bachelor, Inc., 356 Or. 543, 556, 340 P.3d 27, 36 (2014).  Here,

Congress considered whether public policy required voiding all existing arbitration agreements

with respect to disputes involving sexual harassment under the FAA and determined that such

policy was not required.  <u>See</u> Zinsky v. Russin, 2022 WL 2906371, at *4 (W.D. Pa. July 22, 2022)

("Such plain language indicates no Congressional intent to apply the EFASASH Act retroactively.

While the Act represents a significant sea change in the enforcement of arbitration provisions,

Congress has chosen to temper that change through prospective rather than retrospective

applicability.").  Contrary to plaintiff's argument, the Ending Forced Arbitration of Sexual Assault

and Sexual Harassment Act demonstrates a public policy that favors enforcing arbitration

agreements pursuant to the FAA, even for claims of sexual harassment, arising before March 3,

2022.  Accordingly, the motions to compel arbitration should be granted.

Because all of the claims are subject to arbitration, the Court should dismiss this action.

<u>See</u> Johnmohammadi v. Bloomingdale's, Inc., 755 F.3d 1072, 1074 (9th Cir. 2014)

---

[2] February 10, 2022 Press Release of Kirsten Gillibrand.

9 – FINDINGS AND RECOMMENDATION

(notwithstanding the language of 9 U.S.C. § 3, a district court may either stay the action or dismiss it outright when it determines that all of the claims raised in the action are subject to arbitration).

<u>CONCLUSION</u>

Defendants' motions to compel arbitration (ECF 5 and 20) should be granted. In addition, because all claims are subject to arbitration, the Court should dismiss this action. A judgment should enter.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 19th day of April, 2023.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge